# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KELSEY BOGGS | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-583 |
| | § | Judge Mazzant |
| KRUM INDEPENDENT SCHOOL | § | |
| DISTRICT and JEREMY HARPOLE | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Krum Independent School District ("Krum ISD") and Jeremy Harpole's ("Harpole") Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. #17). Having reviewed the motion and the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiff Kelsey Boggs was a student in the Krum ISD, who had a respiratory illness. Her respiratory illness caused Boggs to miss numerous days of school, seventeen days during the 2013 school year and twenty-one days during the fall semester of the 2014 school year. All of Plaintiff's absences were accompanied by either parent or doctor permission. Based on these absences, in December 2014, Plaintiff's mother ("Ms. Boggs") was served a summons to appear in truancy court based on excessive absences. The summons surprised Ms. Boggs because she was not notified that Plaintiff's absences were an issue, that an attendance hearing had already been held, or that Plaintiff's absences would result in a loss of credits. After she received the summons, Ms. Boggs turned to Harpole, former principal at Krum High School. Harpole informed Ms. Boggs of Plaintiff's plea options, and that the attendance committee already met and determined that Plaintiff was not eligible to make up any of her credits. Harpole would not share the names or

contact information for any members of the attendance committee and refused to discuss the appeal further prior to court.

Plaintiff appeared in truancy court, pleaded "no contest", and received six months of probation and twenty-two hours of community service. She was further ordered to make up her hours with the school. Harpole announced in court that the school could work things out with Plaintiff and she would be able to maintain her credits. Ms. Boggs contacted Harpole after the hearing and asked if she could appeal the absences to the attendance committee and if Plaintiff could earn credits through alternative methods, such as credits by examination. Harpole responded that any official attendance appeal would go through him, and Plaintiff would not be allowed to earn credit by exams. However, Harpole informed her that Plaintiff was ninety-one hours behind but could earn the missing credits through an online school at her own expense. Ms. Boggs did not agree with the ninety-one credit hours because some of the absences should have been excused based on Plaintiff's illness. Additionally, that same day, the day of Plaintiff's truancy court appearance, Harpole was overheard by other students in the cafeteria saying that Plaintiff was a "liar" and loudly discussing the details of the hearing.

Ms. Boggs emailed the Krum ISD Superintendent Cody Carroll and told him everything that had transpired. Carroll responded the next day informing Ms. Boggs that he would look into the situation but that her story differed from Harpole's. Ms. Boggs then expressed concern about retaliation on her daughter, and Carroll assured her there would be no retaliation.

Before Christmas break in 2014, Ms. Boggs, Plaintiff, and Plaintiff's uncle all met with Harpole to discuss credits and attendance issues. Harpole assured the family that Plaintiff could make up her credits through Friday night and Saturday school, which Plaintiff would start after the holiday break. Upon Plaintiff's return from break, Ms. Boggs received Plaintiff's report card and

all her courses were marked with an "NC" meaning no credit. Ms. Boggs emailed Harpole asking why Friday night and Saturday school had not started and again requested Plaintiff be allowed to earn credits through an exam. She did not receive a response.

On January 22, 2015, Ms. Boggs learned that Harpole started a bet with several other teachers and assistant principals at Krum High School regarding whether or not Plaintiff would be able to earn her missing credit hours or not. Harpole would also follow Plaintiff from class to class and insult her in front of other students, leading Plaintiff to feel intimated and ashamed. Ms. Boggs again emailed Harpole asking about the Friday night and Saturday school, earning credits through an exam, and informed him that she planned on making a formal complaint. She received no response to her email.

Additionally, on January 22, 2015, Ms. Boggs filed the Bully/Harassment form online on Krum ISD's website against Harpole. The next day, Ms. Boggs filed a Level I complaint against Harpole, which she withdrew and changed to a Level III complaint after receiving a halfhearted response from Carroll. Ms. Boggs also submitted a Letter of Appeal for Plaintiff's attendance credit on Plaintiff's behalf to Harpole, Carroll, and the Krum ISD board members ("the Board"). She never received a response regarding her letter of appeal.

Over time Plaintiff's mental health began to deteriorate and Plaintiff exhibited high levels of anxiety, depression, suicide attempts, and fear of going to school. This ultimately led to Plaintiff taking about thirty-five antidepressants in an attempt to overdose. Subsequently, Plaintiff was hospitalized and then sent to a mental health facility for about twelve days. After released from the mental health facility, Plaintiff attempted to return to Krum High School but was not allowed to do so and was forced to withdraw. Instead, Plaintiff attended a special school, which included outpatient counseling services through a hospital.

Plaintiff, while pregnant, then filed a complaint with the Texas Education Agency ("TEA") against the School District. Plaintiff thereafter learned that a complaint had been filed against her with Child Protective Services ("CPS"). Due to the temporal proximity between the TEA complaint and the CPS complaint, Plaintiff believes someone from Krum ISD filed the complaint with CPS in retaliation for the TEA complaint.

Based on this set of facts as alleged by Plaintiff, she filed suit on August 22, 2017. On October 17, 2017, Plaintiff filed her First Amended Complaint (Dkt. #12). On October 17, 2017, Plaintiff filed her Second Amended Complaint (Dkt. #15). On October 24, 2017, Defendants filed the present motion to dismiss (Dkt. #17). Plaintiff responded to the motion on November 10, 2017 (Dkt. #30) and Defendants filed their reply on November 15, 2017 (Dkt. #31).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine

4

whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants ask the Court to dismiss Plaintiff's claims for three reasons: (I) Plaintiff failed to exhaust her administrative remedies under the IDEA; (II) Plaintiff failed to state a claim against Krum ISD under § 1983; and (III) Harpole is entitled to qualified immunity.

5

## I. Exhaustion of Remedies

Krum ISD asks the Court to dismiss Plaintiff's claims for relief under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act ("ADA") because it argues that Plaintiff failed to properly exhaust her remedies under the Individuals with Disabilities Act ("IDEA"). Krum ISD maintains that even though Plaintiff does not explicitly plead a claim under the IDEA, the gravamen of Plaintiff's complaint under Section 504 and the ADA is a denial of a Free Appropriate Public Education ("FAPE"). As a result, Krum ISD argues that Plaintiff must exhaust her administrative remedies under the IDEA.

Regardless of what the gravamen of the complaint is, Plaintiff argues that Krum ISD is estopped from arguing that Plaintiff's claims are for a denial of a FAPE.[1] Plaintiff directs the Court to the due process hearing proceedings and argues that Krum ISD, on multiple occasions, argued or represented that there were no IDEA or FAPE issues. Plaintiff asserts that Krum ISD is now taking a position that is inconsistent with its previously held legal position and is thus, estopped from making the argument. Plaintiff offers three examples of Krum ISD's previous legal position: (1) Krum ISD's motion to dismiss in the due process hearing; (2) a telephonic pre-hearing conference; and (3) a written agreement between the parties. Krum ISD maintains that it has not taken any position inconsistent with any previous legal position.

When analyzing a motion to dismiss, the Court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387. The due process proceedings were not referenced in the Second Amended Complaint, nor

---

[1] Plaintiff additionally argues that the gravamen of her complaint is discrimination based upon disability, and alternatively, that exhaustion would be futile. However, it is unnecessary to address these arguments for purposes of this motion to dismiss.

were any of the documents, hearings, or written agreements that took place during the due process proceedings. Accordingly, the Court cannot assess whether Defendant is estopped from making this argument. The Court finds that this argument is better suited for a motion for summary judgment. Accordingly, because the Court does not determine whether Defendant can assert this argument at this stage, it also declines to address the validity of the argument at this stage of the litigation.

## II. Plaintiff's § 1983 against Krum ISD

Plaintiff asserts a § 1983 claim against Krum ISD for First Amendment retaliation and denial of her Equal Protection rights under the Fourteenth Amendment. Plaintiff claims that Krum ISD ratified the acts, omissions, and customs of its employees and, as such, are responsible for their conduct. Plaintiff alleges that the Board failed to properly train and supervise employees, which rises to the level of a separate violation of the Fourteenth Amendment. Defendant moved to dismiss these claims arguing that Krum ISD cannot be vicariously liable for actions of its employees and the complaint failed to allege facts surrounding Plaintiff's failure to train or supervise claim. The Court will address both arguments in turn.

### A. Vicarious Liability

Defendant maintains that a school district cannot be liable for its employees and can only be found liable based on the conduct of an individual with delegated policymaking authority. Plaintiff counters that her mother filed a complaint with Harpole, Krum ISD's superintendent, and the Board and none of them responded, which creates an inference or raises a fact that it is a Krum ISD policy, practice, or custom to not respond to complaints.

As the Court previously noted in *Wright v. Denison Independent School District*, when alleging a § 1983 claim, a plaintiff may not establish liability against a government entity through

7

*respondeat superior*. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Wright*, No. 4:16-cv-615, 2017 WL 2262778, at *3 (E.D. Tex. May 24, 2017), *memorandum adopting in part*, No. 4:16-cv-615, Dkt. #36 (E.D. Tex. Apr. 19, 2017). Accordingly, plaintiffs must plead and prove that the government entity "*itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95). To establish that the government entity caused the constitutional violation, the Fifth Circuit requires a showing that an "official policy" caused the plaintiff's harm. *Deville*, 567 F.3d at 170. The Fifth Circuit has explained that an official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). A plaintiff has to "specifically identif[y]" the contested policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Further, if that "policy [is] based on a pattern," the plaintiff must demonstrate the pattern "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of . . . employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). "Such 'policy' must derive from the government entity's recognized [policymaker], such as a school's board of trustees. This ensures plaintiffs do not saddle government entities with vicarious liability for the actions of its

agents not in accord with policy." *Wright*, 2017 WL 2262778, at *3 (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 257–48 (5th Cir. 2003); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

As the Court further observed, "[p]art-and-parcel of a court's obligation to avoid subjecting a government entity to *respondeat superior* liability under § 1983 is the court's responsibility to screen pleadings for sufficiency under the *Twombly* and *Iqbal* standard for pleading sufficiency." *Id.* According to the Court, "generic assertions of municipal liability will not suffice." *Wright*, 2017 WL 2262778, at *4.

After reviewing the Second Amended Complaint, the motion to dismiss, the response, and the reply, the Court finds that Plaintiff has stated a plausible official policy from Krum ISD's recognized policymaker for her § 1983 claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

### B. Failure to Train or Supervise

Defendant further moves to dismiss Plaintiff's failure to train or failure to supervise allegation because Plaintiff sets forth no factual allegations to support her contentions. Plaintiff responds that "the fact Boggs singularly complained to the School Board and they did nothing about it, raises a fact issue, as to whether or not they are providing staff including the Superintendent and Principal, correct supervision." (Dkt. #30 at p. 17). Plaintiff does not directly respond to Krum ISD's argument against her failure to train claim, although the case she cites in support of her failure to supervise claim involves failure to train as opposed failure to supervise. As such, if Plaintiff still asserts both grounds, the Court will address both in turn.

"[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378,

9

387 (1989). To succeed on a failure to train or supervise claim, Plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate; (2) a causal link between such failure and the violation of Plaintiff's constitutional rights; and (3) such failure amounts to deliberate indifference. *Martinez v. Foster*, No. 4:13CV59, 2017 WL 9286990, at *6 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted by*, 2017 WL 1251105 (E.D. Tex. Mar. 31, 2017) (citing *Brown v. Callahan*, 623 F.3d 249, 254 (5th Cir. 2010); *Gast v. Singleton*, 402 F. Supp. 2d 794, 798–99 (S.D. Tex. 2005)). "'[W]hen municipal policymakers are on actual notice or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program." *Henderson v. Killeen Ind. Sch. Dist.*, 2013 WL 6628630, at *4 (W.D. Tex. Dec. 16, 2013) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (1978)).

"Claims of inadequate supervision and claims of inadequate training both generally requires that the plaintiff demonstrate a pattern." *Moreno v. Northside Indep. Sch. Dist.*, No. SA-11-CA-0746-XR, 2012 WL 13029076, at *7 (W.D. Tex. Jan. 23, 2012) (citing *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 n.34 (5th Cir. 2005)). However, Plaintiff may succeed on a failure to train cause of action based on the "single incident exception," if she can show "'that the highly predictable consequence of a failure to train would result in the specific injury suffered and that the failure to train represented the moving force behind the constitutional violation.'" *Thomas v. James*, No. 5:14CV2, 2015 WL 4639733, at *4 (E.D. Tex. Aug. 4, 2015) (quoting *Sander—Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

In her complaint, Plaintiff alleged that Krum ISD has a group of policies and procedures regarding concerns about bullying and harassment of students, but Plaintiff alleges that the Board

failed to train and supervise Krum ISD employees regarding this procedure. "'[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Quinn v. Guerrero*, No. 4:09CV166, 2016 WL 4529959, at *12 (E.D. Tex. Aug. 9, 2016) *report and recommendation adopted by*, 2016 WL 4508224 (E.D. Tex. Aug. 28, 2016) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Here, Plaintiff has not specifically pleaded how the training program is defective or how the failure to supervise was insufficient. *Id.* (citing *Waters v. City of Hearne*, 629 F. App'x 606, 612 (5th Cir. 2015); *Williams v. City of Cleveland*, 736 F.3d 684, 687 (5th Cir. 2013)). Even further, Plaintiff did not plead any facts that would rise to the level of deliberate indifference. Plaintiff did not plead that the Board was aware of inadequate training or supervision. Lastly, Plaintiff has not sufficiently established a "pattern" of behavior, which is typically required for a failure to supervise or train cause of action. Accordingly, the Court finds that Plaintiff failed to plead a plausible claim for failure to supervise or train, and accordingly, such claim should be dismissed.

### III. Qualified Immunity

Plaintiff also asserts a First Amendment retaliation claim and Fourteenth Amendment claim against Harpole individually. Harpole asserts a qualified immunity defense. Plaintiff responds that she has sufficiently pleaded her claim to survive a motion to dismiss.

Fifth Circuit courts have routinely acknowledged and applied the rule that a district court may properly order that a party make a Rule 7(a) Reply in response to the opposing party's assertion of a qualified immunity defense. *See, e.g.*, *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995); *Schultea v. Wood*, 47 F.3d 1427, 1434–35 (5th Cir. 1995). For example, the Fifth Circuit held, in *Schultea*, that "[w]hen a public official

pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." 47 F.3d at 1433. The Fifth Circuit further observed that "[v]indicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." In this case, the Court finds that greater detail is necessary for Plaintiff to overcome the qualified immunity defense. Therefore, because it is common practice for a district court to order a reply under Rule 7(a) under similar circumstances, the Court now orders the Plaintiff to file a Rule 7(a) reply.[2]

## CONCLUSION

It is therefore **ORDERED** that Defendants Krum Independent School District and Jeremy Harpole's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. #17) is hereby **GRANTED IN PART and DENIED IN PART**. Defendants' motion is **GRANTED** as to Plaintiff's failure to train and failure to supervise claim. The motion is **DENIED** as to Plaintiff's Section 504 and Title II claims. Finally, the Court reserves ruling on the qualified immunity issue of the motion to dismiss as Plaintiff shall hereby file a Rule 7(a) Reply within fourteen (14) days of this Order.

**SIGNED this 1st day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court allows Plaintiff to file a Rule 7(a) Reply, the Court will withhold its ruling on the qualified immunity issue of the motion to dismiss.