# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KELSEY BOGGS, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-583 |
| | § | Judge Mazzant |
| KRUM INDEPENDENT SCHOOL | § | |
| DISTRICT and JEROMY HARPOLE | § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [Dkt. #41], which, after careful consideration, will be granted in part and denied in part.

## BACKGROUND

Viewed in the light most favorable to Plaintiff Kelsey Boggs and resolving all disputes in her favor as the non–moving party,[1] the record reflects the following facts.[2]

Plaintiff attended high school in the Krum Independent School District (the "School District") for her freshman and sophomore year (Dkt. #47, Exhibit 2 at p. 1). She suffers from severe respiratory issues, which purportedly caused her to miss twenty days of school her freshman year and an additional twenty the semester after (Dkt. #47, Exhibit 2 at p. 1; Dkt. #47, Exhibit 3 at p. 1). Most if not all of these absences were supported by a note written by her mother, her doctor, or both (Dkt. #47, Exhibit 2 at p. 1; Dkt. #47, Exhibit 3 at p. 2). Instead of offering Plaintiff

---

[1] Defendants ask the Court to ignore Plaintiff and her mother's affidavits because they purportedly contradict statements they made under oath in a deposition. The Court need not rule on this argument since the Court denies Defendants' motion for summary judgment as to the RA/ADA claims based on evidence outside of the affidavits and finds that Plaintiff's § 1983 claims are insufficiently supported—even assuming the truth of the affidavits.

[2] In their briefs, Defendants levy attacks on Plaintiff's character that seem to have no or little relevance to the issues to be decided on this motion. This includes a suggestion that Plaintiff is a liar because her Complaint lists an old address rather than her current one—as well as several references to Plaintiff's personal life, including her dating history, alcohol use, a shoplifting incident, and her mother's issuance of a bad check. The Court does not consider irrelevant character evidence when deciding the merits of the motion and reminds Defense counsel of his duty to act professionally in all court matters. *See* LOCAL RULE AT–3(k) ("Effective advocacy does not require antagonistic or obnoxious behavior, and members of the bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.").

services for students with disabilities or conducting an assessment to determine whether those services were appropriate, Defendants referred Plaintiff's mother ("Mrs. Boggs") to truancy court (Dkt. #47, Exhibit 2 at p. 2).

Mrs. Boggs reached out to Principal Jeremy Harpole ("Principal Harpole") the day after receiving a summons to the Truancy Court hearing (Dkt. #47, Exhibit 2 at p. 2). She expressed her intent to appeal the referral to truancy court since Plaintiff's absences were due to her health, and requested the contact information for the School's Attendance Committee and the Superintendent (Dkt. #47, Exhibit 2 at p. 2). Principal Harpole "curtly" responded that, if Mrs. Boggs did not plead "guilty," the matter would be for a grand jury to decide—without giving Mrs. Boggs the information requested (Dkt. #47, Exhibit 2 at pp. 2–3).

At the hearing held the following day, Principal Harpole told the Truancy Court he would work with Mrs. Boggs to help Plaintiff secure all necessary course credits (Dkt. #47, Exhibit 2 at p. 3). But when Mrs. Boggs followed up on that offer, she and Plaintiff found Principal Harpole unhelpful. Although there were other ways for Plaintiff to make up her course credits (*see, e.g.,* Dkt. #51, Exhibit 6 at pp. 12–14; Dkt. #51, Exhibit 7 at pp. 15–16), Principal Harpole recommended that Plaintiff take online courses at Texas Tech that she could not afford (Dkt. #47, Exhibit 2 at p. 3; Dkt. #51, Exhibit 6 at p. 14). He also recommended that Plaintiff start taking classes on Friday nights and on Saturdays (Dkt. #47, Exhibit 2 at p. 4)—even though the Saturday classes would not start for another two months (Dkt. #51, Exhibit 6 at p. 13).

Plaintiff contends that Principal Harpole started retaliating against her due to her mother's advocacy. Plaintiff reports that Principal Harpole called her and her mother "liars" in earshot of other students, followed her from class to class, and gave her intimidating looks (Dkt. #47, Exhibit 2 at p. 4; Dkt. #47, Exhibit 3 at pp. 2–3). Principal Harpole also reportedly questioned whether

Plaintiff could make up the credits in question to another faculty member, who relayed that message to Plaintiff (Dkt. #47, Exhibit 2 at p. 5; Dkt. #47, Exhibit 3 at p. 3). Mrs. Boggs raised concerns about Principal Harpole's conduct to the Superintendent on multiple occasions (*see* Dkt. #47, Exhibit 2 at pp. 4, 5, 7). The Superintendent responded to one complaint (about the Principal calling Plaintiff a "liar") by promising that School District staff would not retaliate against Plaintiff but ignored her complaints otherwise (*see* Dkt. #47, Exhibit 2 at pp. 4, 5, 7). Mrs. Boggs also used the School District website to file a bullying complaint against Principal Harpole four days later but did not receive a response (Dkt. #47, Exhibit 2 at p. 5). According to Mrs. Boggs, these failures to respond violate School District Policy (Dkt. #47, Exhibit 2 at pp. 7–8).

These events made Plaintiff anxious, depressed, and scared to attend school, prompting Plaintiff to attempt to take her life by overdosing on antidepressants (Dkt. #47, Exhibit 2 at pp. 5–6; Dkt. #47, Exhibit 3 at p. 3). Plaintiffy subsequently elected to transfer to a high school with an intensive outpatient program (Dkt. #47, Exhibit 2 at p. 6). Mrs. Boggs told Principal Harpole of the attempted suicide and upcoming transfer. She also asked him to grant Plaintiff credits Plaintiff believed she had earned, her absences notwithstanding (Dkt. #47, Exhibit 2 at p. 6). Principal Harpole responded that he would grant the credits "with the understanding that [Plaintiff] would not be coming back to the district" (Dkt. #47, Exhibit 2 at p. 6). But he would not live up to that promise, sending Plaintiff's new high school her school records without the credits in question (Dkt. #47, Exhibit 2 at p. 6).

Plaintiff subsequently accused the School District of violating her rights under the Individuals with Disabilities Education Act ("IDEA") by engaging in the above-referenced conduct, and filed a Due Process Petition against the School District with the Texas Education Agency (the "Agency") (Dkt. #21 at pp. 5–22)—as parties are required to do when bringing a

3

claim under that statute. *See* 20 U.S.C. §§ 1415(f), 1415(l). Before the action was resolved on the merits, Plaintiff and the School District stipulated that:

> [T]here are no issues related to the Individuals with Disabilities Education Act (IDEA) or concerns that the student did or did not receive a Free Appropriate Public Education.

(Dkt. #21 at p. 70). Plaintiff then moved to dismiss the matter (Dkt. #21 at p. 67) and, after the dismissal, filed this suit based on substantially similar allegations (*see* Dkt. #15). This lawsuit, however, does not accuse the School District of violating the IDEA. It, instead, brings claims against the School District for violations of the Rehabilitation Act of 1973 (the "RA") and the Americans with Disabilities Act (the "ADA"). It also brings claims against both Defendants under 42 U.S.C. § 1983. The School District now moves for summary judgment on Plaintiff's RA and ADA claims, arguing that Plaintiff should have exhausted her administrative remedies before the IDEA State Agency—its prior representation that the claims did not implicate issues related to the IDEA apparently notwithstanding. Defendants also seeks summary judgment on Plaintiff's § 1983 claims based on a failure to raise genuine issues of material fact and qualified immunity.

## LEGAL STANDARDS

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court

4

"must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or

weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants argue that Plaintiff's claims for violations of the American Disabilities Act and Rehabilitation Act are merely repackaged IDEA claims, which fail because Plaintiff has not exhausted her administrative remedies under that statute. They also argue that her § 1983 claims fail because there are no genuine issues of material fact as to the claim against the School District, and because qualified immunity protects Principal Harpole from § 1983 liability. The Court addresses these issues in turn.

I. **ADA and RA Claims (Failure to Exhaust under the IDEA)**

The IDEA requires schools to give students with disabilities "a free and appropriate public education" ("FAPE") that is "designed to meet [their] unique needs through the formulation of an Individualized Education Program ('IEP')." *Gardner v. School Bd. Caddo Parish*, 958 F.2d 108, 110 (5th Cir. 1992). Before a plaintiff may bring an IDEA claim in federal court, the plaintiff must exhaust the administrative remedies provided to her under the statute. *Id.* at 111–12. This means that the plaintiff must seek "an impartial due process hearing conducted by [a] state or local educational agency," *see* 20 U.S.C. §§ 1415(b)(2); 1415(f), unless doing so would be futile, *see Gardner*, 958 F.2d at 111–12.[3] This is true even when the plaintiff's IDEA claim also overlaps with claims based on the violations of other statutes. *See Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) ("The IDEA requires administrative exhaustion not just of claims arising under it, but also of Rehabilitation Act claims that overlap with the IDEA.").

---

[3] The Court does not address Plaintiff's futility arguments since the motion for summary judgment as to these claims fails on other grounds.

6

The School District argues that Plaintiff's ADA and RA claims are artfully pleaded IDEA claims that should be dismissed due to Plaintiff's failure to exhaust the IDEA's administrative remedies. But the School District is judicially estopped from raising this argument. Judicial estoppel is an equitable doctrine meant "to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). Although the doctrine "is not governed by 'inflexible prerequisites or an exhaustive formula for determining [its] applicability," courts generally consider whether "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.*

Judicial estoppel should bar the School District from securing a dismissal based on any failure to exhaust administrative remedies here.[4] Although the School District now faults Plaintiff for not obtaining a final decision on the merits while this dispute was before a State Educational Agency, it made the opposite argument to the State Agency that previously heard these claims. The School District stipulated that Plaintiff's allegations did not raise "issues related to the *Individuals With Disabilities Education Act* (IDEA) or concerns that the student did or did not receive a Free Appropriate Public Education" (Dkt. #21 at p. 70). The Hearing Officer subsequently dismissed the action on this basis (Dkt. #21 at p. 70–74). Allowing the School

---

[4] Although no party has argued otherwise, the Court notes that there are no concerns about whether subject matter jurisdiction exists over an IDEA claim that has not been exhausted. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001) (explaining that exhaustion under a different statute was "not jurisdictional and may be subject to certain defenses such as waiver, estoppel or equitable tolling"). The Fifth Circuit typically finds failures to exhaust to be an affirmative defense rather than a jurisdictional requirement. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 142 (5th Cir. 2016) (citing *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990)) ("Absent a jurisdictional nature to 'failure to exhaust,' we treat such failures to exhaust as affirmative defenses, not jurisdictional perquisites."). And the Court has no reason to believe that the Fifth Circuit would find differently in the IDEA context. *See Gardner*, 958 F.2d at 112 (suggesting that a failure to exhaust an IDEA claim is not jurisdictional "because there is a judicial exception to exhaustion when exhaustion would be futile or inadequate").

7

District to now fault Plaintiff for not obtaining a resolution on the merits before the State Agency would be manifestly unjust—to the integrity of the judicial process and to Plaintiff.

The School District dismisses the Stipulation as "Plaintiff's attempt at sleight of hand to try and circumvent exhaustion requirements" (Dkt. #41 at pp.13-14)—Plaintiff's prior attempt to adjudicate these issues before an IDEA State Agency apparently notwithstanding. More specifically, the School District states that:

> Agreeing that there is no IDEA or FAPE issues is like ordering Chilean Sea Bass. The menu calls it Chilean Sea Bass and jacks up the price, but you are still eating a Patagonian toothfish. Just because you agree to call Plaintiff's fishy claims something else, doesn't mean the claims could not have been brought under IDEA; they clearly could have been (and they were). Thus, the question here is whether [the School District] (and the Court) would be estopped from looking at the Plaintiff's fishy facts, due to the written [stipulation], and finding that regardless of the written [stipulation], Plaintiff was required to exhaust her administrative remedies. To paraphrase the classic song from Casablanca, "You must remember this, a fish is still a fish." Herman Hupfield, As Time Goes By, in Casablanca (1931) (as performed by Dooley Wilson, "You must remember this, a kiss is just a kiss. . .").

(Dkt. #41 at pp. 13–14).

Although it is not entirely clear, the School District appears to argue that the Stipulation reflects the Parties' shared belief that Plaintiff lacked a valid IDEA claim—not that Plaintiff's allegations did not raise issues under the IDEA. The School District will not be let off the hook that easily. Again, the Stipulation states that there are no "concerns that the student *did or did not* receive a Free Appropriate Public Education"—not that the claims raised IDEA claims were invalid (Dkt. #21 at p. 70) (emphasis added). The only reasonable way to interpret this language is that Plaintiff's allegations do not raise IDEA issues that the State Agency need to decide one way or the other, making any exhaustion requirement under the IDEA moot. This interpretation is especially reasonable since the School District drafted the Stipulation. This means that, to the extent the Stipulation is ambiguous, it should be interpreted in Plaintiff's favor. *See Gonzalez v.*

8

*Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) ("It is well–established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used.").

The School District also suggests that the Court should excuse the Stipulation because its latest position—that Plaintiff's claims do arise under the IDEA—is correct. But judicial estoppel is meant "'to protect the integrity of the judicial process' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self–interest.'" *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205–06 (5th Cir. 1999) (quoting *United States v. McCaskey*, 9 F.3d 368, 379 (5th Cir. 1993)). Judicial estoppel is therefore proper when a party attempts to pull a bait and switch on the courts—irrespective of whether that party's first or second inconsistent position is correct.[5]

Finally, Defendants note that Principal Harpole did not agree to the Stipulation. But he does not need to. As Defendants acknowledge in other sections of their motion (*see* Dkt. #41 at p. 26), Plaintiff has brought the ADA and RA claims against the School District not Principal Harpole (*see* Dkt. #15 at pp. 9–11). Whether or not Principal Harpole is judicially estopped from raising this argument is irrelevant.

Because the motion does not argue that summary judgment is proper on Plaintiff's ADA and RA claims for any other reason,[6] thereby waiving these arguments, *see Audler v. CBC Innovis*

---

[5] Regardless, it is not clear if Plaintiff's ADA and RA claims are based on the deprivation of a free and public appropriate education. Plaintiff alleges that the School District deprived her access to school credits by not accommodating her absences—not that the School District should have provided her a specialized education. This allegation arguably could have been raised by an adult at the school who sought leave for being unable to attend work due to her disability. *See Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743, 756 (2017) (explaining that "[o]ne clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE" is whether "an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance"—such as when a student cannot enter a school because it "lacks access ramps"); *see also S.L. ex rel. Mary L. v. Downey Unified Sch. Dist.*, No. CV 13–06050 DDP PJWX, 2014 WL 934942, at *7 (C.D. Cal. Mar. 10, 2014) (finding no need to exhaust remedies under the IDEA since Plaintiff's claim was based on the District's failure to properly accommodate "her need to make up work . . . so that she can remain in her regular instructional classes" and not based on a request for "special education services under the IDEA").

[6] The School District also argues, without explanation, that Plaintiff's Rehabilitation Act claim is barred by the statute of limitations (Dkt. #41 at pp. 5–6), and that a failure to establish a § 1983 claim amounts to a failure to establish an

*Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)) ("A party 'waives an issue if he fails to adequately brief it.'"), the School District's motion for summary judgment on the ADA and RA claims will be denied.

II.     **Section 1983 Claims Against the School District**

But the Court reaches the opposite result as to Plaintiff claims against the School District for violation of 42 U.S.C. § 1983. Section 1983 creates a cause of action for those who have been "deprived of a right or interest secured by the Constitution and laws of the Untied States" by a person acting "under color of state law." *See Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The Supreme Court has held that a local government such as a school district "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The plaintiff must, instead, establish that:

> [E]xecution of a government's policy or custom, whether made by its lawmakers or by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflict[ed] the injury.

*Id.* This means that, to succeed on a § 1983 claim against a local government, the plaintiff must put forth "proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

---

ADA or RA claim (*see* Dkt. #41 at pp. 21–25, which discusses a failure to state a claim under the RA and ADA based only on a 1983 analysis). The School District was waived these arguments by not adequately briefing them. *See Audler*, 519 F.3d at 255 (quoting *Castro*, 259 F. App'x at 665) ("A party 'waives an issue if he fails to adequately brief it.'"). These arguments appear to be meritless, regardless. The statute of limitations on the RA claim was likely tolled until Plaintiff turned eighteen. *See Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992) (explaining that district court erred in finding that the statute of limitations barred the plaintiff's Rehabilitation Act claim "without considering the possibility that the statute of limitations was tolled" while the plaintiff was a minor). And, although a § 1983 claim against a municipality requires proof of a policymaker and a policy that are at fault, there are no such requirements under the ADA or the RA. *See Delano-Pyle v. Victoria Cty, Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) ("[N]either a policymaker, nor an official policy must be identified under the ADA or the RA.").

Plaintiff's § 1983 claims are based on allegations that the School District infringed on her First and Fourteenth Amendment rights by retaliating against her for raising complaints about her absences and Principal Harpole's conduct. Plaintiff's claims fail even assuming she has suffered a constitutional injury. Plaintiff provides no proof of an official policy or custom that caused these purported injuries. To the contrary, Plaintiff concedes that the School District has policies requiring the school principal, superintendent, and school board to respond to complaints—as well as policies prohibiting harassment, discrimination, or retaliation against students with disabilities (Dkt. #47, Exhibit 2 at pp. 7–8).

Plaintiff argues that the School District has adopted a custom in which it simply ignores complaints that have been filed, its formal policies notwithstanding.[7] She notes that "Mrs. Boggs filed complaints with Defendant Harpole, the School District's Superintendent[,] and the School Board and none of them directly responded to her" (Dkt. #47 at p. 21). But the Fifth Circuit has held that, in 1983 cases, a custom refers to a "'persistent, often repeated, constant violation'" and is not "ordinarily be inferred from single" incidents based on a specific plaintiff's "individual case." *See Potrowski v. City of Hous.*, 237 F.3d 567, 581 (5th Cir. 2001) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)). Plaintiff offers no evidence of any complaints that were ignored separate and apart from those pertaining to her. *See id.* at 582 (finding that there was no evidence of a custom of failing to investigate or discipline bad actors since "the failure to discipline arises only from this plaintiff's and her associates' allegations against the officers. Piotrowski did not offer evidence of any other IAD complaints made against Fincher and Wells. There is no pattern of complaints by other citizens."). Plaintiff, in fact, concedes that School District personnel did respond to Mrs. Bogg's complaints

---

[7] Plaintiff also appears to fault the School District for a failure to appropriately train staff but the Court has already dismissed this claim on Defendants' motion to dismiss (*see* Dkt. #52 at pp. 10–11).

on occasion. Mrs. Boggs' declaration reflects that she received some responses from Principal Harpole and one response from the Superintendent—even if these responses inadequate or unsatisfactory (Dkt. #47, Exhibit 2 at pp. 3–4, 6). *See id.* ("Regardless whether one agrees or disagrees with the IAD conclusions exonerating Fincher and Wells, the IAD files reveals no systematic inattention to the complaints.").

Additionally, the record lacks evidence that a School District policymaker was aware of any such custom. *See id.* at 578 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)) ("'Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy–making authority'"). The parties agree that neither the Superintendent nor Principal Harpole are School District policymakers, and the Court has no reason to question this conclusion. In Texas, the School Board is typically the only policymaker for a school board. *See Rivera*, 349 F.3d at 247 (quoting TEX. EDUC. CODE § 11.151(b)) ("Both parties agree that Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'"). Plaintiff is thus required to show that the School Board was aware of a custom in which complaints were regularly ignored. The record contains no such evidence. Mrs. Boggs states that she filed a complaint to the School Board concerning Principal Harpole's comments toward Plaintiff and alleged failure to find her a workable accommodation. There is no indication that Plaintiff complained about a custom in which School District personnel routinely failed to respond to student complaints—nor is there evidence that the failure to respond to complaints was so prevalent that the School Board should have been aware of such a custom. *See Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009)) ("In order to find a municipality liable

for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'").

Plaintiff's § 1983 claims against the School District will be dismissed as a result.

III.  **Section 1983 Claims Against Principal**

Plaintiff has also brought a § 1983 claim against Principal Harpole based on first amendment retaliation. This motion turns on whether Principal Harpole is entitled to "qualified immunity." This doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant is entitled to qualified immunity unless he (1) "violated a statutory or constitutional right" (2) that "was 'clearly established' at the time of the challenged conduct." *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Plaintiff contends that Principal Harpole infringed on her First Amendment rights by retaliating against her after her mother levied various complaints to or about Principal Harpole (Dkt. #52 at p.2). *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)) (explaining that the First Amendment prohibits "adverse governmental action against an individual in retaliation for the exercise of protected speech activities"). This means that, to survive summary judgment, Plaintiff must offer evidence that (1) she "engaged in constitutionally protected activity, (2) the defendant['s] actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage

in that activity, and (3) the defendant['s] adverse actions were substantially motivated by [her] exercise of constitutionally protected conduct." *See id.* at 258.

Plaintiff fails to offer proof of the second element. The Fifth Circuit has found that evidence of "concrete" injuries may chill protected speech but non–concrete injuries or injuries that are relatively minor do not. *See Keenan*, 290 F.3d at 259. As such, evidence that the defendant withheld advertising, refused to pay the plaintiff interest, threatened to divulge confidential information from a sexual assault investigation, or denied a land use permit likely creates a chilling effect. *See Keenan*, 290 F.3d at 259 (indicating that withholding advertising, threatening to divulge information from a sexual assault investigation, and denying a land use permit are each sufficient); *Newman Marchive P'ship, Inc. v. Hightower*, 349 F. App'x 963, 966–67 (5th Cir. 2009) (finding that refusing to pay interest is sufficient). But ominous glares, criticisms, unfair accusations, and unwarranted investigations that do not lead to a tangible harm (even when the plaintiff has been followed and recorded) likely do not. *See Keenan*, 290 F.3d at 259 (finding a steady stream of false accusations and vehement criticism insufficient); *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994) (finding that videotaping the plaintiff in a public place as part of an investigation insufficient where it did not lead to an adverse employment action); *Harmon v. Beaumont Indep. Sch. Dist.*, No. 1-12-cv-571, 2014 WL 11498077, at *2, 4 (E.D. Tex. Apr. 7, 2014), *aff'd*, 591 F. App'x 292 (5th Cir. 2015) (finding ominous staring and taking photographs of plaintiff insufficient). Plaintiff cites no evidence that Principal Harpole "retaliated" against her in any concrete way—Plaintiff's attempts to cast these allegations as evidence of a "hostile school climate" notwithstanding.[8] Plaintiff, instead, accuses

---

[8] Even if a hostile school climate could be used to show retaliation, the Court questions whether such an interest was clearly established at the time the events occurred. Plaintiff has not cited, and the Court has been unable to locate, a single case in this Circuit in which a plaintiff brings a first amendment retaliation claim based on a hostile school environment.

Principal Harpole of calling her and her mother "liars," following her to classes, and openly speculating about her chances to graduate. Plaintiff also accuses Principal Harpole of asking her mother to promise that Plaintiff would not return to the district in exchange for school credits. A jury could not find that a person of ordinary firmness would be chilled from exercising their free speech rights based on these interactions, however immature. This point is accentuated by the fact that (through her mother) Plaintiff has complained to and about Principal Harpole throughout the relevant time period—even after Plaintiff transferred schools.[9] The Court cannot find that this conduct would chill an ordinary person from exercising her right to free speech on this basis.

## CONCLUSION

Defendants' Motion for Summary Judgment [Dkt. # 41] is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Plaintiff's § 1983 claims against both Defendants are **DISMISSED WITH PREJUDICE** while all other claims remain viable. The Clerk of the Court is **DIRECTED** to terminate Defendant Jeremy Harpole as a party in this action.

**IT IS SO ORDERED.**

SIGNED this 21st day of March, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[9] The Court appreciates that Plaintiff's continued advocacy, on its own, may not be dispositive since she may or may not be someone of ordinary resolve.